UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ARTHUR BERTRAM, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No.** |
| CAROLYN W. COLVIN ) | **4:13-cv-00662-MHH** |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|     Defendant. ) | |

## **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g) and § 1383(c), claimant Arthur Bertram seeks judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ"), who denied Mr. Bertram's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. (Doc. 1). As discussed below, the Court finds that substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's ruling.

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

1

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**PROCEDURAL AND FACTUAL BACKGROUND:**

On February 9, 2010, Mr. Bertram applied for a period of disability and disability insurance benefits under Title II of the Social Security Act and an

application for supplemental security income benefits under Title XVI.  (TR 25, 154, 156).

The Social Security Administration denied Mr. Bertram's application on April 16, 2010. (*Id.*). At Mr. Bertram's request, an Administrative Law Judge conducted a hearing on September 9, 2011. (TR 78-145; 167-168). Mr. Bertram, Mr. Bertram's father, Mr. Bertram's wife, and David Head, an impartial vocational expert, testified during the September 9, 2011 hearing. (TR 25). Following the testimony, the ALJ decided to withhold a ruling until he received evidence from a new specialist who Mr. Bertram was scheduled to see after the hearing. (TR 142). The ALJ held a supplemental hearing on April 24, 2012.  (TR 40).  Mr. Bertram; William A. Rack M.D., an impartial medical expert; and Joe W. Mann, an impartial vocational expert, testified during the second hearing. (TR 25, 41).

Mr. Bertram was 31 years old when he appeared at his first hearing in September 2011.  He turned 32 before the second hearing in April 2012. (TR 32). Mr. Bertram has a high school education.  Before seeking disability benefits he worked as a truck loader and unloader.  (TR 32).  At the hearings, Mr. Bertram claimed he could not work because of his seizures.  (TR 155).  Mr. Bertram testified that he suffers daily from petit seizures.  During these seizures, he stares off into space, appearing frozen for minutes at a time.  He does not remember the episodes. (TR 29, 91-93). Mr. Bertram also maintains that he suffers from

occasional grand mal seizures which leave him severely fatigued for up to 48 hours after each episode.  (TR 29, 91-93). Mr. Bertram claims that his condition limits his physical ability to squat, bend, stand, reach, walk, kneel, talk, and climb stairs. (TR 29).  Mr. Bertram reported that his episodes impair his cognitive ability to remember and understand information, concentrate, and follow instructions.  (TR 29, 110-112).

Mr. Bertram contends that he was unable to follow a prescription medication therapy both because he could not afford the drugs and because he experienced debilitating side effects to several different drugs he tried over the course of his treatment. (TR 31).  Mr. Bertram began receiving Medicaid benefits that he could use to help pay for medication approximately one month before his first hearing. (TR 97).  Mr. Bertram never has stayed on medication for more than a month, purportedly because side effects generally manifest within a week of starting anti-seizure medications. (TR 29).  Side effects include mood swings, skin rashes, insomnia, and excessive sleepiness.  (TR 29).

Despite his lack of treatment, Mr. Bertram is able to prepare simple meals, wash his clothes, wash dishes, plant flowers, grocery shop, read, watch television, and attend church. (TR 31). Mr. Bertram also serves as the primary caregiver for his one year old child, and he tends to a number of farm animals on his property. (TR 31).

In his decision, the ALJ found that Mr. Bertram had not "engaged in substantial gainful activity since August 15, 2008, the alleged onset date." (TR 27). The ALJ concluded that Mr. Bertram's seizures were a severe impairment because they cause "more than minimal functional limitations on the [Mr. Bertram's] ability to perform work-related duties on a sustained basis." (TR 27). Despite Mr. Bertram's limitations, the ALJ determined that Mr. Bertram's "extensive history of non-compliance to prescribed seizure medication," and failure to provide "medical confirmation that [he] . . . remained on any anti-seizure medication for at least three months" prevents the seizures from meeting or equaling the listing requirement under 11.03. (TR 28). Next, the ALJ concluded that Mr. Bertram had the "residual functional capacity perform all sitting, standing, walking, lifting and carrying, pushing and pulling required for medium exertional work." (TR 28). The ALJ noted that Mr. Bertram would have to take standard seizure precautions: "no operation of motor vehicles; no work around unprotected heights; no work on or around open water; no work where he would be exposed to hazards or moving machinery; and no heavy lifting." (TR 28). Although the ALJ determined that Mr. Bertram could not perform his past relevant work, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Bertram could perform, including hand packager, hospital cleaner, and marker/tagger. (TR. 33).

Accordingly, the ALJ concluded that Mr. Bertram was not disabled under sections 216(i) and 223(d) of the Social Security Act.  (TR 33).

On February 11, 2013, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision.  (TR 1).  Having exhausted all administrative remedies, Mr. Bertram filed this action for judicial review pursuant to §205(g) and §1631(c)(3) of the Social Security Act.  *See* 42 U.S.C. §405(g) and §1383(c)(3).

## **ANALYSIS:**

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin,* 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant must prove that he is disabled.  *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).  To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis.  *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to

6

other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).  "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Mr. Bertram argues he entitled to relief from the ALJ's decision because: (1) the medical expert was vague and non-responsive and the vocational expert's testimony was not based on a full statement of Mr. Bertram's limitations; (2) the ALJ failed to give proper weight to the opinion of Dr. Bogdanova; (3) the ALJ failed to give appropriate weight to testimony from Mr. Bertram's father and Mr. Bertram's wife; (4) the ALJ failed to address listing 4.03 regarding epilepsy; and (5) the ALJ failed to state adequate reasons for discrediting Mr. Bertram's testimony.  The Court addresses each argument in turn.

### A. Medical and Vocational Expert Testimony

Mr. Bertram argues that the ALJ's determination was not based on substantial evidence because the medical expert, Dr. Rack, was "vague and non-responsive" to the ALJ's questions, and the VE did not base his opinion on a "correct or full statement of claimant's limitations and impairments." (Doc. 13 p. 24).  Mr. Bertram's allegations are without merit.

The record contradicts Mr. Bertram's assertion that Dr. Rack was vague and

7

non-responsive in his testimony. Based upon Dr. Rack's detailed testimony regarding Mr. Bertram's impairments (TR 44-45), the ALJ asked "so we can't say that [Mr. Bertram] meetings the requirements of the listings [11.02, 11.03], I'm assuming?" (TR 45). Dr. Rack replied: "That's correct." (TR 45). The ALJ also posed the following question to Dr. Rack:

> And can we say with any degree of confidence that if, if it should be found that the reason that he's not compliant is not willful failure to follow prescribed treatment, but simply an inability to tolerate the medications, could we say that given the frequency of seizures that is documented that he equaled in severity this listing?

(TR 46). Dr. Rack answered, "I can't. I can't say that." (TR 46). Dr. Rack explained his answer by detailing some of the reasons that he could not answer the ALJ's question in the affirmative. He stated:

> [I]t was mentioned that since age 16 [Mr. Bertram] has not taken any medications. And there is a statement by his mother . . . that he is not having seizures when he was on medications. The remainder of the things don't really address the situation that you're asking about very clearly. And I know at time it was specifically stated that he wasn't on medicines because he couldn't afford them, and then there are other times in which it was apparent that, that he just wasn't taking the medications.

(TR 46-47). This testimony is neither vague nor non-responsive, and it goes to the heart of the issue that troubled the ALJ the most: Mr. Bertram's failure to take any anti-seizure medication for a period of time long enough to allow the medication to reach a therapeutic level. The ALJ made clear in the hearings and in his opinion

that Mr. Bertram's unwillingness to comply with a prescription regime for any meaningful period of time hampered the ALJ's ability to evaluate the impact of Mr. Bertram's seizure disorder on his ability to work. (TR 28, 45-47, 142-43).

As with Dr. Rack, the ALJ posed hypothetical questions to the VE. The ALJ asked:

> [F]or purpose of this question I want you to assuming a younger individual 28 to 32 years of age during the period in question, a high school level of education, the work history as we previously described it, heavy as described in the DOT, light as actually done, SVP: 3, it's described in the DOT 2 is actually done. I want you to assume for purposes of this question that because of the medically determined impairments, both severe and nonsevere, this individual would be restricted in a manner consistent with an individual suffering from seizures. That is, the individual can sit, stand and walk without limitations; the individual would be precluded from heavy lifting, carrying, pushing, and pulling. I use the term heavy as defined in the exertional requirement detailed in the DOT, the Dictionary of Occupational Titles. The individual should not operate motor vehicles, should avoid working at heights, protected or unprotected, should avoid working around open water, should avoid hazards which would include working around moving machinery or any place where the individual might put themselves or coworkers in danger if a seizure was experienced, should avoid, [I] think we already said, heavy lifting. If we take that, that of itself, could such an individual perform the Claimant's past work, either as he did it, or as it's generally done in the economy?"

(TR 70-71). Mr. Bertram argues that the hypothetical was improper because, "the hypothetical question d[id] not fully state plaintiff's impairments and limitations due to seizures and the inability to take medications. . . ." (Doc. 13 p. 24). The Court disagrees.

9

For the testimony of a VE to "constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, when an ALJ questions a VE about the capabilities of the claimant, the Eleventh Circuit has held that the ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford,* 363 F.3d at 1158; *see also Allen v. Barnhart*, 174 Fed. Appx. 497 (11th Cir. 2006).

In his analysis, the ALJ stated that "the severity of [Mr. Bertram's] alleged symptoms and alleged extensiveness of [Mr. Bertram's] limitations simply are not supported." (TR 29). The ALJ based his assessment on the inconsistent reports regarding the frequency of Mr. Bertram's episodes, noting that, "…the frequency of the claimant's seizure-like activity is not reflected in the record, as there have been documented periods wherein the claimant experienced no seizure-like activity."  (TR 29).  The ALJ also noted that the record contains very little information about the limiting effects of the seizures.  As support for his analysis, the ALJ referred to notes from Dr. Sathyan Iyer, who stated that Mr. Bertram first experienced seizure like episodes at the age of 14, but then "did not have them for a while after that." (TR 29, 575).  Dr. Iyer remarked that according to Mr. Bertram, his seizures resumed in 2000.  Dr. Iyer concluded that Mr. Bertram "may have some impairment of functions involving driving, working at heights, working

around machinery, [and performing] overhead activities. [Mr. Bertram] does not have significant restriction of function involving sitting, standing, handling, hearing, speaking." (TR 577). The ALJ also referenced a period from December 2010 until September 2011, in which Mr. Bertram experienced no tonic clonic activity without prescription medication treatment. (TR 30). The ALJ noted that Mr. Bertram had no documented seizure activity while under seven days of physician monitoring at the Gadsden Regional Medical Center in January of 2012. (TR 30).

Substantial evidence supports the ALJ's finding that the record does not support Mr. Bertram's description of the severity of his episodes. *Crawford*, 363 F.3d at 1158. The ALJ's hypothetical question to the VE represented all of the claimant's impairments that were supported by the record. *See id.*

### B. The ALJ Afforded Proper Weight to Dr. Bogdanova's Opinion

Mr. Bertram claims that the ALJ failed to afford Dr. Bogdanova's records proper weight. Mr. Bertram's contention is without merit.

Because Dr. Bogdanova was Bertram's treating physician, the ALJ had to give Dr. Bogdanova's opinion "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error.

around machinery, [and performing] overhead activities. [Mr. Bertram] does not have significant restriction of function involving sitting, standing, handling, hearing, speaking." (TR 577). The ALJ also referenced a period from December 2010 until September 2011, in which Mr. Bertram experienced no tonic clonic activity without prescription medication treatment. (TR 30). The ALJ noted that Mr. Bertram had no documented seizure activity while under seven days of physician monitoring at the Gadsden Regional Medical Center in January of 2012. (TR 30).

Substantial evidence supports the ALJ's finding that the record does not support Mr. Bertram's description of the severity of his episodes. *Crawford*, 363 F.3d at 1158. The ALJ's hypothetical question to the VE represented all of the claimant's impairments that were supported by the record. *See id.*

### B. The ALJ Afforded Proper Weight to Dr. Bogdanova's Opinion

Mr. Bertram claims that the ALJ failed to afford Dr. Bogdanova's records proper weight. Mr. Bertram's contention is without merit.

Because Dr. Bogdanova was Bertram's treating physician, the ALJ had to give Dr. Bogdanova's opinion "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error.

'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. at 931 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

Recognizing that "Dr. Bogdanova examined the [Mr. Bertram] on a regular and ongoing basis, [and was] familiar with the overall history and complaints, and monitored his condition during the relevant period," the ALJ explicitly assigned Dr. Bogdanova's opinions and statements the "greatest weight." (TR 31). Contrary to Mr. Bertram's argument that the ALJ ignored Dr. Bogdanova's "findings of frequent seizures, inability to take medications, and adverse reactions [,]" the ALJ took specific note of the evidence in the record that illustrated the frequency with which Dr. Bogdanova observed Mr. Bertram's episodes. (Doc. 13. p. 22).

The ALJ reviewed Dr. Bogdanova's impressions following Mr. Bertram's seven day hospitalization at Gadsden Regional Medical Center:  "After the claimant's January 2012 admission to the Gadsden Regional Medical Center, his treating physician, Olga Bogdanova M.D., remarked that despite having EEG monitoring during the entire admission, the claimant did not 'have any of his typical spells recorded.'" (TR 30, 678-686).  Dr. Bogdanova's notes from April 2012 state:

> Intractable staring spells and spells of convulsive activity. The patient does have an abnormal EEG suggestive of primary generalized epilepsy trait. However, I am quite skeptical that the patient is actually having epileptic seizures. He is apparently intolerable to any of the anti-seizure medications that have been tried so far. He had a 7 day admission for video EEG monitoring at GRMC in the beginning of the year without a single seizure captured. He has been describing seizure spells pretty much either every day or every other day otherwise. We need to document what the spells are. I strongly suspect that these are non-epileptic in nature.

(TR 687).

Contrary to Mr. Bertram's claims, the ALJ properly assigned great weight to Dr. Bogdanova's opinions and properly concluded that her assessment does not suggest that Mr. Bertram is disabled. *See Gaskin*, 533 Fed. Appx. at 930 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

### C. Testimony of Mr. Bertram's Father and Wife

Mr. Bertram claims that the ALJ rejected Mr. Bertram's family's testimony without a sufficient basis. The Court disagrees. The ALJ considered the third-party testimony, but he concluded that this testimony alleged "a greater degree of debilitation than what the evidence can support." (TR 32). The ALJ thoroughly reviewed medical evidence that contradicts the testimony from Mr. Bertram's father and from Mr. Bertram's wife concerning the frequency of Mr. Bertram's seizures. (TR 29-30). The ALJ also explained contradictions between the third-party testimony and Mr. Bertram's activities of daily living. (TR 31). Mr.

13

Bertram's reliance on *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990), to support his argument on this point is misplaced. In *Lucas*, the Eleventh Circuit concluded that that the ALJ failed to consider testimony from the claimant's daughter and neighbor. *Id.* The ALJ did not review the testimony or provide reasons for rejecting the testimony. *Id.* Unlike *Lucas*, the ALJ here explicitly considered the third-party testimony and explained why he rejected the testimony.

### D. The ALJ Properly Considered Listing 11.03

The record undermines Mr. Bertram's contention that the ALJ "does not identify any listings or even a category of listings that the ALJ considered." (Doc. 13, p. 31). At step three of the analysis, the ALJ specifically stated that he considered listings 11.02[1] and 11.03 "in light of [Mr. Bertram's] medical history," but the ALJ found that the listing level severity was not met. (TR 28). Listing 11.03 provides:

> Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.03. The burden of proving a listing equivalent falls to the claimant:

---

[1] Mr. Bertram does not claim his impairments meet Listing 11.02. (Doc. 13, p. 29, n. 9).

14

> [the claimant] must present specific medical findings that meet the various test listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.

*Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). The ALJ concluded that Mr. Bertram's seizures did not meet Listing 11.03 because Mr. Bertram did not "display documented seizure patterns that occur with sufficient frequency *in spite of at least three months of prescribed treatment*." (TR 28) (emphasis in ALJ decision).

The ALJ noted that although Mr. Bertram testified that the side effects of his seizure medication typically manifested themselves after approximately one week of use, Dr. Rack, the medical expert, testified that one week probably was an insufficient amount of time for the medication to have risen to therapeutic levels. (TR 28, 44-45). Based upon Mr. Bertram's history of non-compliance with prescribed seizure medication and a lack of medical confirmation that Mr. Bertram remained on any seizure medication for at least three months, the ALJ found that Mr. Bertram's condition could not meet Listing 11.03. (TR 28, 575, 623, 635, 639, 642, 661).

Additionally, the ALJ found that "the alleged frequency of [Mr. Bertram's seizure] condition is not supported by the objective medical evidence of record." (TR 28). To support his conclusion, the ALJ referred to May 2009 treatment note

that indicated Mr. Bertram has experienced no grand mal seizures in 18 months. (TR 29-30, 531). Moreover, Mr. Bertram complained of a seizure during an emergency room visit in October 2010 (TR 30, 623); however, during an office visit in August 2011, Mr. Bertram reported that he had not had a seizure since December 2011. (TR 655). The ALJ also noted that in September 2011, Dr. Bogdanova reviewed results of a 24-hour EEG and noted that "[n]o organized seizure activity was present." (TR 30, 663-665). This substantial evidence supports the ALJ's conclusion that Mr. Bertram's condition does not meet Listing 11.03; and the record belies Mr. Bertram's conclusory contention that the ALJ did not identify the listing he considered or provide an explanation for his determination.

### E. The ALJ Properly Discredited Mr. Bertram's Testimony

If the ALJ refuses to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker v. Bowen,* 826 F.2d 996, 1004 (11th Cir. 1987). "Although [the Eleventh Circuit] does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). Furthermore, substantial evidence in the record must support these specific reasons. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987).

The ALJ stated that Mr. Bertram's testimony regarding the frequency and limiting effects of his seizures was not credible because it was not "reflected in the record, as there have been documented periods wherein the claimant experienced no seizure-like activity." (TR 29). The ALJ then identified the various medical records supporting that conclusion, which, as explained above, is the same substantial evidence the ALJ relied upon to determine that the seizures did not meeting a listing. (TR 53, 623, 655, 663-665). The ALJ commented that these medical records indicate that Mr. Bertram experienced long periods without seizures even when not medicated and that during periods of formal evaluation, no doctor observed seizures or seizure-like episodes. (TR 31).

The ALJ also found that Mr. Bertram's activities of daily living contradicted his testimony. (TR 31). Specifically, the ALJ noted that Mr. Bertram could grocery shop, read, watch television, and attend church. (TR 31). Further, Mr. Bertram is the primary caregiver for his one-year old son, he can perform household chores, and he can take care of the family's animals, including goats and chickens. (TR 31, 582). The ALJ explicitly stated his reasons for discrediting Mr. Bertram's testimony, and substantial evidence supports the ALJ's decision to do so. *See e.g.*, *Brown v. Comm'r of Soc. Sec.*, 442 Fed. Appx. 507 (11th Cir. 2011) (the ALJ sufficiently assessed the credibility of the claimant's testimony where the ALJ thoroughly discussed the claimant's allegations in light of the record of a

whole); *Hennes v. Comm'r of Soc. Sec.*, 130 Fed. Appx. 343, 347-49 (11th Cir. 2005) (ALJ properly rejected claimant's subjective testimony because the testimony was not supported by clinical or laboratory findings and because the testimony was inconsistent with other medical evidence and the claimant's daily activities).

**CONCLUSION**:

For the reasons stated above, the Court concludes the ALJ's decision was based upon substantial evidence, and the ALJ applied proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. The Court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 25, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE